IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Robert Edward Cormany,** | Case No. 5:21CV933 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| | Magistrate Judge Thomas M. Parker |
| **Kilolo Kijakazi,** **Acting Commissioner of Social Security** | MEMORANDUM OPINION AND ORDER |
| **Defendants.** | |

This matter is before the Court on the Objections of Plaintiff Robert Edward Cormany ("Plaintiff" or "Cormany") to the Report and Recommendation of Magistrate Judge Thomas M. Parker regarding Plaintiff's request for judicial review of Defendant Commissioner of the Social Security Administration's ("Defendant" or "Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Doc. No. 15.) For the following reasons, Plaintiff's Objections (Doc. No. 16) are overruled, the Report & Recommendation ("R&R") (Doc. No. 15) is accepted, and the Commissioner's decision is affirmed.

**I.     Background**

In August 2019, Cormany filed his application for DIB, alleging a disability onset date of June 1, 2019. (Doc. No. 7 (Transcript ["Tr."]) at 178.) The application was denied initially and upon reconsideration, and Cormany requested a hearing before an administrative law judge ("ALJ"). (Tr. 67-79, 82-88, 107.) On October 9, 2020, the ALJ conducted a hearing at which Cormany was represented by counsel and testified. (Tr. 36-66.) A vocational expert ("VE") also testified. (*Id*.) On November 17, 2020, the ALJ found that Cormany was not disabled. (Tr. 22-29.) The Appeals

Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. Cormany seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.)

The case was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2(b)(1) for a Report and Recommendation ("R&R"). The R & R concludes that the ALJ's decision is supported by substantial evidence and recommends that the decision be affirmed. (Doc. No. 15.) Cormany filed Objections, to which the Commissioner responded. (Doc. Nos. 16, 17.)

Cormany raises the following sole Objection to the Magistrate Judge's R&R: "The Magistrate Judge erred in his assertion that that the ALJ applied proper legal standards and reached a decision supported by substantial evidence in finding Dr. Iler's opinion unpersuasive." (Doc. No. 16.) The Court has conducted a *de novo* review of this issue.

## II. Standard of Review

Under 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926 at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to *de novo* review by the district court in light of specific objections filed by any party.") (citations omitted); *Orr v. Kelly*, 2015 WL 5316216 at *2 (N.D. Ohio Sept. 11, 2015) (citing *Powell,* 1994 WL 532926 at *1). *See also* Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1).

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The impairment must prevent the claimant from doing the claimant's previous work, as well as any other work which exists in significant numbers in the region where the individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A). Consideration of disability claims follows a five-step review process.[1] 20 C.F.R. § 404.1520.

The Court's review of the Commissioner's decision to deny benefits is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted)). *See also Jones v. Comm'r of Soc. Sec.*, 815 Fed. Appx. 926, 929 (6th Cir. 2020).

---

[1] Under this five step review, the claimant must first demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Before considering step four, the ALJ must determine the claimant's residual functional capacity, i.e., the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbot*, 905 F.2d at 923; *Jones*, 815 Fed. Appx. at 929.

If substantial evidence supports the Commissioner's finding that the claimant is not disabled, that finding must be affirmed even if the reviewing court would decide the matter differently. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). Moreover, the Commissioner's decision must be affirmed even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

### III. Plaintiff's Objection to the R&R[2]

In his sole objection, Cormany argues that the ALJ committed legal error when he failed to properly evaluate the opinion of cardiologist Mark Iler, M.D. (Doc. No. 16.) Specifically, Cormany maintains that, under the applicable regulations, the ALJ is required to explain how he considered the supportability and consistency of a physician's medical opinions. (*Id.*) (citing 20 C.F.R. 404.1520c(b)(2)). He asserts that the ALJ herein failed to address these factors and that "any attempt to bolster the ALJ's insufficient analysis by trying to read through the lines of [the] decision must fail." (*Id.* at p. 3.) Cormany further argues that the Magistrate Judge erred in concluding otherwise, arguing that "Magistrate Judge's finding that the ALJ properly considered Dr. Iler's opinion is merely a rubber stamp of the ALJ's decision." (*Id.* at p. 1.)

In response, the Commissioner acknowledges that the ALJ did not use the words supportability and consistency in evaluating Dr. Iler's August 2019 opinion. (Doc. No. 17.) She

---

[2] The Magistrate Judge's thorough recitation of the medical and opinion evidence need not be repeated and is incorporated herein.

4

maintains, however, that the Magistrate Judge correctly found that the ALJ's assessment of supportability and consistency can be inferred from the ALJ's discussion of the record evidence in other parts of the decision. (*Id*.) The Commissioner asserts that the Magistrate Judge correctly evaluated this issue in the context of the ALJ decision and properly found that "the ALJ's extended discussion of the testimony [and] evidence detailing Plaintiff's improved cardiological condition, and reliance on the state reviewing physicians' prior administrative findings, provides ample explanation of the regulatory factors for assessing medical opinion evidence." (*Id*. at p. 3.)

At Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."[3] 20 C.F.R. § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff;[4] (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Because the regulations consider

---

[3] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. § 404.1520c for claims filed on or after March 27, 2017, such as here.

[4] This includes consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. 404.1520(c)(c)(3)(i) through (v).

5

supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

Although these regulations are less demanding than the former rules governing the evaluation of medical source opinions, "they still require that the ALJ provide a coherent explanation of [his] reasoning." *Lester v. Saul*, 2020 WL 8093313 at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506 at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). An "ALJ's failure ... to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, 2021 WL 3056108 at *11 (W.D. Tenn. July 20, 2021). *See also Childers v. Kijakazi*, 2022 WL 2706150 at * 5 (E.D. Ky. July 12, 2022) ("When the Court is unable to follow the ALJ's logic, error has occurred.") That being said, an ALJ need not specifically use the terms "supportability" or "consistency" in his analysis. *See Hardy v. Comm'r of Soc. Sec.,* 2021 WL 4059310 at *2 (S.D. Ohio Sept. 7, 2021); *Terry Q. v. Comm'r of Soc. Sec.*, 2022 WL 969560 at * 5 (S.D. Ohio March 31, 2022); *Fowler v. Comm'r of Soc. Sec.*, 2022 WL 3648436 at * 9 (N.D. Ohio Aug. 9, 2022), *report and recommendation adopted by* 2022 WL 3647771 (N.D. Ohio Aug. 24, 2022).

Here, Cormany sought medical treatment for persistent dry cough, chest pain and pressure, dyspnea, fatigue, and occasional palpitations.  (Tr. 296.)  He was admitted to the hospital on July 3, 2019, after his stress test had to be aborted due to an episode of ventricular tachycardia.  (Tr. 272-274, 294, 323.)  Cormany was seen the following day by Dr. Iler for a cardiology consult.  (Tr. 395-398.)  Dr. Iler strongly suspected that Cormany had underlying ischemic heart disease and recommended a left heart catheterization.  (Tr. 398.)  Cormany subsequently underwent a heart catheterization and echocardiography, both of which were abnormal.  (Tr. 393, 452-455.)  He underwent coronary artery bypass graft surgery on July 10, 2019.  (Tr. 417.)  On July 18, 2019, Cormany was discharged from the hospital with diagnoses of: (i) coronary artery disease; (ii) persistent atrial fibrillation; (iii) acute systolic heart failure; (iv) type 2 diabetes with hyperglycemia; and (v) left-arm cellulitis/phlebitis.  (Tr. 334).

Cormany returned to Dr. Iler on August 29, 2019, at which time he reported feeling "reasonably well." (Tr. 731.)  He stated that his orthopnea, cough, and recumbent chest pressure had resolved but that he still had some fatigue and lack of endurance.  (*Id*.)  Physical examination results were positive for shortness of breath, palpitations, and decreased lower extremity pulses, but otherwise normal. (Tr. 733.)  Dr. Iler recommended "aggressive secondary prevention measures," including high intensity statins, low dose aspirin, and beta blocker.  (Tr. 735.)  He strongly encouraged Cormany to participate in cardiac rehabilitation and wear a LifeVest due to his high risk for sudden cardiac death and dangerous arrhythmias.  (*Id*.)  Dr. Iler also noted that Cormany was NYHA Class II.[5] (*Id*.)

---

[5] As the Magistrate Judge noted, "NYHA" refers to the New York Heart Association Functional Classification system for the severity of heart failure. Classes of Heart Failure, American Heart Association, https://www.heart.org/en/health-topics/heart-failure/what-is-heart-failure/classes-of-heart-failure (last visited on September 8, 2022). Class II levels of

On that same date, Dr. Iler completed a Physical Assessment Form. (Tr. 669-670.) Therein, Dr. Iler listed Cormany's diagnoses as: (i) ventricular tachycardia; (ii) ischemic cardiomyopathy; (iii) coronary artery disease; (iv) left ventricular dysfunction; and (v) coronary artery bypass grafts. (Tr. 669.) He identified fatigue and dizziness as side effects of medications that might impair Cormany's capacity for work. (*Id*.) Dr. Iler opined that Cormany's associated symptoms would "constantly" interfere with the attention and concentration required to perform simple work-related tasks. (*Id*.) In addition, he opined that Cormany (1) would need to recline or lie down more than the typical number and length of breaks; (2) could walk half a city block without rest or significant pain; (3) could sit up to 3 hours and stand/walk up to 1 hour in an 8-hour workday; (4) would need unscheduled 15-minute breaks every 30 minutes; (5) could occasionally lift 10 pounds but never 20 pounds; and (6) would be absent from work more than 4 times per month. (Tr. 669-70.)

Cormany subsequently underwent an echocardiogram, which was abnormal. (Tr. 696.) On October 30, 2019, he underwent implantation of a subcutaneous cardiac defibrillator. (Tr. 721.) Cormany returned to Dr. Iler on November 26, 2019, at which time he reported "feeling pretty well" and denied orthopnea, exertional dyspnea, or chest discomfort. (*Id*.) Dr. Iler continued aggressive secondary prevention measures and again classified Cormany as NYHA Class II. (Tr. 726.) At a cardiology follow up appointment with a certified nurse practitioner in February 2020, Cormany denied cardiac complaints, aside from fatigue and "rare" palpitations. (Tr. 1409-1415.)

In his decision, the ALJ discussed the medical evidence, including evidence regarding Cormany's hospitalization, bypass surgery, defibrillator implantation, and visits with his primary care

---

functional capacity include: "Slight limitation of physical activity. Comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea (shortness of breath)." *Id*.

physician, pulmonologist, and cardiologists. (Tr. 26-27.) He evaluated Dr. Iler's August 2019 opinion as follows:

> The claimant's primary care physician, Mark Iler, MD filled out a Physical Assessment form dated August 29, 2019. He stated the claimant's symptoms would constantly interfere with his attention and concentration to perform simple work tasks. He noted medication side effects of fatigue and dizziness. He indicated the claimant could walk ½ block, sit three hours, and stand/walk one hour in an eight-hour day, would need 15-minute breaks every half hour, and would have more than four absences per month. He indicated the claimant could occasionally lift up to 10 pounds (3F; 11F). This opinion is not persuasive, as this opinion was given right after the surgery and before the defibrillator was placed, and the records demonstrate improvement since that time, with no ongoing symptoms of orthopnea, exertional dyspnea, or chest discomfort. He testifies as to ongoing fatigue, although he does yard work and walks a block or two a day (testimony). The records support a range of sedentary exertion, as outlined in the above residual functional capacity.[6] I asked the representative to seek a new statement from Dr. Iler, but none was provided.

(Tr. 28.)

Cormany argues that remand is required because the ALJ failed to discuss the factors of supportability and consistency in his evaluation of Dr. Iler's opinion. The Court disagrees. Although the ALJ did not use the words "supportability" and "consistency" in the decision, this omission does not necessarily mean that the ALJ did not consider these factors. *See Hardy*, 2021 WL 4059310 at * 2. To the contrary, reading the decision as a whole, the Court finds that the ALJ considered both the supportability and consistency of Dr. Iler's opinion in determining that it was "not persuasive."

In assessing whether a medical opinion is supportable, "the focus is on the relevance of the objective medical evidence and supporting explanations upon which the opinion is based." *Hale v. Comm'r*, 2022 WL 909021 at * 4 (E.D. Tenn. March 28, 2022). "The more relevant the objective

---

[6] The ALJ found that Cormany had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he could never climb ladders, ropes, or scaffolds; he could occasionally climb ramps or stairs; he could frequently stoop, kneel, crouch, and crawl; and he should avoid the use of moving machinery, commercial driving and unprotected heights. (Tr. 25.)

9

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1).

Although he did not use the word "supportability," the ALJ herein implicitly found that Dr. Iler's August 2019 opinion was not supported by the medical evidence when he concluded that Cormany's medical records showed improvement after the implantation of the defibrillator. (Tr. 28.) Indeed, earlier in the decision, the ALJ expressly discussed Dr. Iler's November 26, 2019 treatment note, in which Cormany reported "feeling pretty well" with no complaints of orthopnea, exertional dyspnea, chest discomfort, or lower extremity swelling. (Tr. 27 citing Tr. 721.) The ALJ also discussed Cormany's February 2020 cardiology follow-up visit, during which Cormany "denie[d] any active cardiac complaints," declined cardiac rehabilitation, and stated that he "believes that he is pretty stable." (Tr. 27 citing Tr. 1410, 1415.) Thus, the ALJ implicitly observed that Dr. Iler's August 2019 opinion of severe physical limitations was not supported, either by Dr. Iler's own post-defibrillator treatment notes from November 2019 or by Cormany's February 2020 cardiology follow up treatment notes. (Tr. 27, 28.)

The ALJ also adequately addressed the issue of consistency. "'Consistency' denotes 'the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim.'" *Hardy*, 2021 WL 4059310 at * 3 (quoting *Hobbs v. Saul*, 2021 WL 1574421 at *8, n. 7 (W.D. Va. April 22, 2021) and *Revisions to Rules*, 82 Fed. Reg. at 5853). *See also Hale*, 2022 WL 909021 at * 4 ("In considering consistency, the focus is on how the opinions provided square with the overall record.") "The more consistent a medical opinion[ ] ... is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ discussed record evidence (including medical treatment records from other providers and Cormany's hearing testimony) that was inconsistent with Dr. Iler's severe functional limitations. Specifically, as noted above, the ALJ discussed Cormany's February 2020 cardiology follow-up treatment notes, in which he denied any active cardiac complaints and declined to participate in cardiac rehabilitation. (Tr. 27 citing Tr. 1410, 1415.) Moreover, the ALJ expressly referenced Cormany's hearing testimony that he performs yard work and walks a block or two each day. (Tr. 27, 28.) Thus, the ALJ implicitly observed that Dr. Iler's August 2019 opinion of severe physical limitations was not consistent with other medical and testimony evidence in the record.

In sum, the ALJ's decision, read as a whole, demonstrates that he considered the factors of supportability and consistency in evaluating Dr. Iler's August 2019 opinion.[7] The decision is sufficient to permit this Court to review the ALJ's evaluation of those factors. *See e.g., Alec F. v. Comm'r of Soc. Sec.*, 2022 WL 278307 at * 12 (S.D. Ohio Jan. 31, 2022) (finding that "the ALJ's decision as a whole is sufficient to permit this Court's review of the ALJ's evaluation of supportability and consistency."), *report and recommendation adopted by* 2022 WL 884022 (S.D. Ohio March 24, 2022). The ALJ's decision substantially complied with the requirements of 20 C.F.R. § 404.1520c, and his failure to specifically use the terms "supportability" and "consistency" in his analysis, even if error, was harmless.

---

[7] Cormany asserts that "any attempt to bolster the ALJ's insufficient analysis by trying to read through the lines of [the] decision must fail" because to do so would constitute a *post hoc* rationalization for agency action. (Doc. No. 16 at p. 3.) The Court disagrees. In determining that the ALJ sufficiently addressed the issues of supportability and consistency, the Court has looked only to the evidence discussed in the ALJ decision itself—not to any *post hoc* reasons that the ALJ could have offered but did not. Accordingly, this argument is without merit and rejected.

11

Accordingly, the Court concludes that the ALJ properly evaluated Dr. Iler's August 2019 opinion and, further, that his decision to reject the extreme limitations in that opinion is supported by substantial evidence. Cormany's Objections are not well taken.

## IV. Conclusion

For all the foregoing reasons, Plaintiff's Objections (Doc. No. 16) are overruled and the Magistrate Judge's Report and Recommendation (Doc. No. 15) is accepted. The Commissioner's final determination denying Plaintiff's application for disability benefits is supported by substantial evidence and is affirmed.

**IT IS SO ORDERED.**

Date: September 9, 2022

 s/Pamela A. Barker  
PAMELA A. BARKER  
U. S. DISTRICT JUDGE